FILED

2023 Aug-22  PM 03:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JOANN BONZI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **4:22-cv-00429-LSC** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

On December 5, 2022, Joann Bonzi ("Bonzi" or "Plaintiff") filed with the Clerk of this Court a complaint against the Acting Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). (Doc. 11.) Bonzi appeals the Commissioner's decision denying her claim for a period of disability and disability insurance benefits ("DIB"). (Doc. 11.) Bonzi timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

### II.    Background

Bonzi has at least a twelfth-grade education and a Vocational Expert (VE) stated her previous work was as a Home Attendant, Marksmanship Instructor, and

Police Officer. (Tr. at 78.) She was 38 years old at the time of her application for a period of disability and DIB on June 22, 2016. (Tr. at 20.) Bonzi's application for benefits alleged a disability onset date of June 12, 2016. (*Id*.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for a period of disability and DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *Id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the claimant's medically determinable physical and mental impairments. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id*. The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial evidence in the record" adequately supported the finding that the claimant was not disabled).

Similarly, the third step requires the evaluator to consider whether the claimant's impairment or combination of impairments meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id*.

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the claimant has the RFC to perform the requirements of her past relevant work ("PRW"). *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent her from performing her PRW, the evaluator will make a finding of not disabled. *Id*.

The fifth and final step requires the evaluator to consider the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Id*. at §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can perform other work, the evaluator will find her not disabled. *Id*.; *see*

*also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") first established that Plaintiff has not engaged in SGA since her alleged disability onset date, June 12, 2016. (Tr. at 24.) Next, the ALJ found that Plaintiff's obesity, cervical spondylosis, degenerative disc disease, degenerative joint disease, kyphosis, fibromyalgia, migraines, posttraumatic stress disorder, anxiety disorder, and depressive disorder qualify as "severe impairments." (Tr. at 24.) However, the ALJ also found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 27.) Following this determination, the ALJ established that Plaintiff has the following RFC:

> [T]o perform medium work as defined in 20 CFR 404.1567(c) except for no more than occasional stooping, crouching, crawling, and kneeling; no climbing of ladders, ramps, stairs, or scaffolds and no unprotected heights. She needed to work in a temperature controlled environment, have no contact with the general public, and occasional contact with co-workers and supervisors. The claimant required minimum work-related changes; and was able to understand, remember, and carry out simple, routine tasks involving one or two step instructions.

(Tr. at 34.)

Relying on the testimony of a VE, the ALJ determined that "considering the

claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (Tr. at 54.) From these findings, the ALJ concluded the five-step evaluation process by stating that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from June 12, 2016," Plaintiff's original alleged disability onset date, "through June 30, 2019, the date last insured." (Tr. at 55.)

## III. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided that those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

"The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *See Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982), *superseded on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022)).

## IV. Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for three reasons: 1) failure to follow the treating physician rule, 2) failure to consider

and discuss the VA's findings, and 3) the ALJ's inappropriate substitution of his opinion for the opinion of medical providers. (Doc. 11 at 6, 17, 18.)

### a. Alleged Error for Failure to Follow the Treating Physician Rule[1]

The SSA regulations dictate that an ALJ *must* give controlling weight to a treating physician's opinion if medically acceptable clinical and laboratory diagnostic techniques support it and it is not inconsistent with the other substantial evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2p. The Eleventh Circuit has echoed this mandate, holding that a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); see also *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good

---

[1] The treating physician rule has since been rescinded. However, it applies in this case because it was originally filed in 2016, with the new regulations only taking effect for cases filed after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298 (Mar. 27, 2017).

cause" existed where the opinion was contradicted by other notations in the physician's own record). An ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

The ALJ stated three reasons for discrediting the opinion of Plaintiff's treating physician, Dr. Wren: 1) the opinion is not corroborated by reports of other physicians and her own clinical findings, 2) the documents were not generated for treatment, and 3) there are "several reasons to question the overall consistency of the claimant's

assertions." (Tr. at 49.) Rationale three is followed by a string cite to several locations in the record.

### i. Corroboration

The ALJ stated the first reason for giving Dr. Wren's opinion little weight is because the "restrictions . . . are not corroborated by the preponderance of reports from other examining and treating practitioners as well as her own clinical findings on examination." (Tr. at 49.) The Eleventh Circuit has held this justification standing alone is not enough. *See Miller v. Commissioner of Social Security*, 21-11794, 2022 WL 669402, *2 (11th Cir. Mar. 7, 2022), *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094, 1109 (11th Cir. 2021). In *Miller*, the ALJ stated the treating physician received minimal weight because "his excessive limitations are not supported by his own treatment notes nor consistent with the rest of the medical evidence of record." 2022 WL 669402, at *2. The Eleventh Circuit stated "this justification is inadequate" and "[t]he ALJ did not 'clearly articulate what evidence led him to this conclusion.'" *Id*. Similarly, in *Simon*, the ALJ stated the doctor's opinion received little weight because it was "inconsistent with the doctor's own clinical findings and other clinical findings discussed further in this decision showing the claimant is capable of performing unskilled work." 7 F.4th at 1108. The Eleventh Circuit stated they could not locate with "any certainty what those findings were

because the ALJ's decision did not list them." *Id*. at 1109. Therefore, they concluded "that the ALJ failed to articulate reasonable grounds for giving . . . little weight." *Id*.

Relying on *Miller* and *Simon*, this Court finds it is necessary to remand for a further inquiry into the lack of corroboration alleged by the ALJ. Simply stating there was no corroboration is not enough for the ALJ to accord little weight to the treating physician opinion – there must be "articulable reasonable grounds." *Id*. Although lack of corroboration perhaps exists, as the Commissioner argues, this does not save the fact that the ALJ did not explain with support as to how this is. (Doc. 15 at 12-13.)

### ii. Not Generated for Treatment

The ALJ stated that Dr. Wren's Physical Capacities Form and Mental Health Source Statement regarding the Plaintiff "were generated, not in an effort to seek medical treatment, but rather in an attempt to bolster the application for benefits. Presumably, the doctor was paid for them." (Tr. at 49.) The Eleventh Circuit has stated that "the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report." *Tavarez v. Commissioner of Social Security*, 638 F. App'x 841, 847 (11th Cir. 2016) (quoting *Reddick v. Chater,* 157 F.3d 715, 726 (9th Cir.1998)).

Plaintiff's reliance is misplaced here for two reasons. First, the ALJ in this case went further and stated, "[w]hile this does not render them invalid, the context in which they were obtained cannot be completely ignored." (Tr. at 49.) Thus, the consideration was not heavily relied upon, but rather something to consider as an "other factor" under 20 C.F.R. § 404.1527(c)(6). Second, this was not the only reason given by the ALJ for giving Dr. Wren's opinion little weight. The ALJ stated lack of corroboration and overall doubts of consistency as other rationales for discrediting Dr. Wren's testimony.

Because there exists other valid reasons to remand the issue as to the weight of this testimony, this reasoning will not be disturbed.

### iii. Overall Consistency

"Before an ALJ may reject a treating physician's opinions as inconsistent with other medical findings in the record, he or she must identify a "genuine inconsistency." *Simon*, 7 F.4th at 1107. "It is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing." *Schink v. Commissioner of Social Security*, 935 F.3d 1245, 1265 (11th Cir. 2019).

Here, the ALJ stated "the limitations are not assigned more than minimal weight . . . there exists several reasons to question the overall consistency of the

claimant's assertions." (Tr. at 49.) Citations to several pages through the record follow this statement. (Tr. at 49-50.) Plaintiff describes this reasoning as a "proverbial wild goose chase." (Doc. 11 at 11.) This Court is inclined to agree. There are no specifics given other than the exhibit numbers and page numbers. These pages encompass lots of information, with an abundance of it having nothing to do with the testimony that is allegedly inconsistent with Dr. Wren's testimony. This court cannot ascertain what the specific inconsistences are that the ALJ is referring to. Although there are examples of potential inconsistencies the Commissioner describes in his brief, several of these are not related to the issue at hand.[2]

For the reasons detailed above, this Court finds this matter should be remanded for the ALJ to specify the genuine inconsistencies.

**b.  Alleged Error for Failure to Consider and Discuss the VA's Findings**

The decisions of other agencies are not binding upon the ALJ. 20 C.F.R. § 404.1504. However, VA disability determinations are "entitled to great weight." *DePaepe v. Richardson*, 464 F.2d 92, 101 (5th Cir. 1972). Although "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," "[t]he 'great weight' standard functions as an exception to this general rule by requiring an ALJ to discuss another agency's decision finding the claimant

---

[2] For example, Dr. Wren described the condition causing these limitations as "chronic pain," but the ALJ points to several unrelated issues such as Plaintiff has a "regular heart rate and rhythm" and "normal skin with no rashes." (Tr. at 50.)

disabled." *Dyer v. Barnhart*, 396 F.3d 1206, 1211 (11th Cir. 2005), *Noble v. Commissioner of Social Security*, 963 F.3d 1317, 1329 (11th Cir. 2020). To decide if proper weight was given to the VA disability determination, the court considers two questions. *Noble*, 963 F.3d at 1330. "First, the court must ask whether the ALJ's decision shows that she considered the other agency's decision." *Id*. Second, the court considers "whether substantial evidence in the record supports the ALJ's decision to depart from the other agency's decision." *Id*. In *Noble*, the ALJ satisfied these two questions because not only did the ALJ say the VA determination was considered, but explained he was departing because there was inconsistency with the "'objective medical evidence' in the record." *Id*. This differs from another case in this circuit in which the ALJ disregarded the VA determination solely because it was based "on a different criteria for deciding whether an individual is 'disabled' or 'unemployable.'" *Brown-Gaudet-Evans v. Commissioner of Social Security*, 673 F. App'x 902, 904 (11th Cir. 2016). The Eleventh Circuit in *Brown-Gaudet-Evans* remanded this case, stating that "the ALJ is not required to give the VA's disability determination controlling weight. In making his own determination of whether Brown-Gaudet-Evans is disabled, however, the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination." *Id*.

In this case, the ALJ discarded the VA's determination in a similar manner as did the ALJ in *Brown-Gaudet-Evans*. The ALJ stated:

> I have considered that the Department of Veterans Affairs has assigned the claimant a service-connected disability rating of 100% and reviewed the information contained in the rating (Exhibit 8F). While such information provides additional textual evidence, the conclusion arrived at by the Veterans Department is assigned little weight. The disability determination procedures utilized by the Department of Veterans Affairs and the Social Security Administration are two separate fundamentally different processes. Unlike the Social Security Administration, the Department of Veterans Affairs does not make a function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual function capacity) or determine whether the claimant is able to perform either her past relevant work or other work that exists in significant numbers in the national economy as is required by the regulations. Consequently, the undersigned has given the VA rating little weight.

(Tr. at 53.)

Although contradictions exist in the record as described in other sections of the ALJ's opinion, they were not properly considered and described here as to the VA disability determination.

Because there is nothing more here than a comparison of the different processes used by each agency for this Court to rely on, this matter must be remanded for the ALJ to "seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination" as required by this circuit. *Brown-Gaudet-Evans*, 673 F. App'x at 904.

### c. Alleged Improper Substitution of ALJ Opinion for the Opinion of Medical Providers

Plaintiff alleges that by the ALJ not recognizing her lupus diagnosis and not including it as a severe impairment, the ALJ improperly substituted his opinion for the opinion of medical providers.

"The ALJ may not make medical findings [him]self." *Ybarra v. Commissioner of Social Security*, 658 F. App'x 538, 543 (11th Cir. 2016). The ALJ stated although lupus is listed throughout the medical records, "there is no indication as to when, how or why this diagnosis was given."[3] (Tr. at 24.) As of 2019, the criteria for a diagnosis of lupus is a "positive antinuclear antibody test." Id. The ALJ found there was no "evidence of diagnostic testing or laboratory findings . . . to support this diagnosis other than the prescribed medications." (Tr. at 25.) Further, the ALJ relied on the medical records by Dr. Wren concluding that they are "unable to provide her with any information regarding disability. Her last visit to the rheumatologist was 2016. She has been followed at the VA Hospital since then and we have no records nor can we obtain these." (Tr. at 3188.) Plaintiff pointed to several instances in the record that support a finding of a lupus diagnosis. (Doc. 11 at 20.) Nonetheless, the ALJ stated "the undersigned affords the claimant the benefit of the doubt and finds these conditions non-severe." (Tr. at 27.)

---

[3] The Court notes that Plaintiff stated her lupus diagnosis was by her "civilian doctor," although this never appears to be expanded upon. (Tr. at 71.)

Although the ALJ expressed doubt as to the credibility of the lupus diagnosis as detailed above, he gave Plaintiff the benefit of the doubt as to the condition, but ultimately decided it was non-severe. He considered not only all of the severe impairments when determining the RFC, but also all of the alleged diagnoses. (Tr. at 34-53.) Even to the extent Plaintiff's lupus should have been labeled as severe, the symptoms are essentially the same as a condition that the ALJ did find severe: fibromyalgia. Plaintiff stated, "my symptoms associated with lupus [are] really no different from the fibromyalgia." (Tr. at 97.)

Therefore, because the diagnosis was still considered in her RFC determination and a diagnosis with the same symptoms was labeled severe by the ALJ, he did not err and this was not an improper substitution of his opinion for the opinion of a medical provider.

## V.    Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds that part of the Commissioner's decision is not supported by substantial evidence and in accordance with the applicable law. For the foregoing reasons, this Court REMANDS the Commissioner's decision for proceedings consistent with this opinion.

**DONE** and **ORDERED** on August 22, 2023.

_____
L. Scott Coogler
United States District Judge

215708